UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MONIQUE M.,**[1]

    **Plaintiff,**

v.

Case No. 2:21-cv-0078
Magistrate Judge Norah McCann King

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Monique M. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On January 20, 2017, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since December 2, 1996. R. 90, 104, 232–33. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

initially and upon reconsideration. R. 111–15, 120–22. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 123. Administrative Law Judge ("ALJ") Peter R. Lee held a hearing on July 15, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 40–82. In a decision dated September 13, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 20, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 24–34. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 5, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 2, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 3, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 48 years old on January 20, 2017, the date on which the application was filed. R. 33. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 26.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, degenerative disc disease with radiculopathy, rotator cuff tendinopathy, status post umbilical hernia, attention-deficit hyperactivity disorder, depressive disorder, and anxiety. *Id*. The ALJ also found that Plaintiff's diagnosed venous insufficiency and restless leg syndrome were not severe. R. 27.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 27–29.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 29–33. Plaintiff had no past relevant work R. 33.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a cafeteria attendant, mail clerk, and photocopy machine operator—existed in the national economy and could be performed by Plaintiff. R. 33–34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 20, 2017, the application date, through the date of the decision. R. 34.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further

proceedings. *Plaintiff's Brief,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

IV.    **RELEVANT MEDICAL EVIDENCE**

On November 7, 2017, Neil Sinha, M.D., who has treated Plaintiff on a monthly basis since May 2013, R. 772, completed a five-page, check-the-box and fill-in-the-blank form entitled "Fibromyalgia Questionnaire." R. 772–76. Asked whether there were no diagnoses other than fibromyalgia that better explain Plaintiff's symptoms and limitations, Dr. Sinha checked the box marked "Yes[,]" and identified low back pain, degenerative disc disease, and myalgia. *Id*. Dr. Sinha also answered "Yes" to whether Plaintiff has widespread pain or a history of widespread pain in all quadrants of her body that has persisted for at least three months and has at least eleven positive tender points upon physical exam and/or digital palpation, indicating that Plaintiff's tender points were located in "cervical/thoracic/lumbar/thighs[.]" R. 773. Dr. Sinha also answered affirmatively when asked whether Plaintiff experienced pain that may fluctuate in intensity and may not always be present. *Id*. Dr. Sinha indicated that Plaintiff experienced chronic widespread pain affecting the following anatomical areas: neck, abdomen, lower back, upper back, upper arm (bilaterally), lower arm (bilaterally), upper leg (bilaterally), lower leg (bilaterally), and hip (buttock). Plaintiff experienced the following repeated manifestations of fibromyalgia symptoms, signs, or co-occurring conditions: fibro fog, depression, nervousness, fatigue/tiredness, insomnia, waking unrefreshed, headache, heartburn, loss of appetite, muscle weakness, irritable bowel syndrome, numbness/tingling, and sun sensitivity. *Id*. Dr. Sinha

described the nature of Plaintiff's pain as "diffuse widespread," which occurred "daily, constant" and which was precipitated or aggravated by "activity, ADLs[.]" R. 774. Dr. Sinha took the following measures to relieve Plaintiff's pain: anti-convulsive medication, injections, non-opioid analgesia, opioid analgesia, psychotropic medication, topical treatment, alternative medicine, massage, physical therapy, and TENs. *Id*. Dr. Sinha opined that, considering Plaintiff's conditions, in an eight-hour workday, Plaintiff could perform a job in a seated position for one hour and perform a job standing and/or walking for one hour. R. 775. According to Dr. Sinha, Plaintiff must avoid continuous sitting in an eight-hour workday and must get up from a seated position to move around every twenty to thirty minutes for a period of twenty to thirty minutes before returning to a seated position. *Id*. Plaintiff could occasionally (up to one-third of an eight-hour workday) lift up to ten pounds and occasionally carry up to five pounds. *Id*. Plaintiff could occasionally grasp, turn, and twist objects bilaterally and could occasionally use her hands and fingers for fine manipulations, but she could never/rarely use her arms for reaching overhead. *Id*. Dr. Sinha further opined that, in an average eight-hour day, Plaintiff's experience of pain, fatigue, or other symptoms would be severe enough to frequently (from one-third to two-thirds of an eight-hour workday) interfere with her attention and concentration. R. 776. According to Dr. Sinha, Plaintiff would need to take one to two unscheduled breaks per hour, totaling thirty to sixty minutes, at unpredictable intervals during an eight-hour workday. *Id*. Dr. Sinha went on to opine that Plaintiff would likely be absent from work more than three times per month as a result of her impairments or treatment. *Id*. In Dr. Sinha's opinion, Plaintiff's symptoms and related limitations apply as far back as January 1, 1995. *Id*. (reflecting also that his specialty is pain medicine).

On June 6, 2019, Dr. Sinha completed a six-page, check-the-box and fill-in-the-blank

form entitled "Fibromyalgia Questionnaire." R. 809–14. Dr. Sinha had most recently treated Plaintiff on June 4, 2019. R. 809. Asked whether there were no diagnoses other than fibromyalgia that better explain Plaintiff's symptoms and limitations, Dr. Sinha checked the box marked "No[.]" *Id*. Dr. Sinha answered "Yes" to whether Plaintiff has widespread pain or a history of widespread pain in all quadrants of her body that has persisted for at least three months and has at least eleven positive tender points upon physical exam and/or digital palpation, indicating that Plaintiff's tender points were located in "shoulders, lumbar spine, knee, elbows[.]" R. 810. Dr. Sinha also answered affirmatively when asked whether Plaintiff experienced pain that may fluctuate in intensity and may not always be present. *Id*. According to Dr. Sinha, Plaintiff experienced chronic widespread pain affecting the following anatomical areas: neck, abdomen, lower back, upper back, upper arm (bilaterally), upper leg (bilaterally), and hip (buttock). Dr. Sinha opined that Plaintiff experienced the following repeated manifestations of fibromyalgia symptoms, signs, or co-occurring conditions: fibro fog, fatigue/tiredness, insomnia, headache, irritable bowel syndrome, and numbness/tingling. *Id*. Dr. Sinha described the nature of Plaintiff's pain as "multiple painful areas, with persistent chronic symptoms" that occur "daily" and that is precipitated or aggravated by "activities, ADLs[.]" R. 814. According to Dr. Sinha, Plaintiff has good days and bad days. R. 812. Dr. Sinha opined that, considering Plaintiff's conditions, in an eight-hour workday, Plaintiff could perform a job in a seated position for three hours and perform a job standing and/or walking for three hours. *Id*. According to Dr. Sinha, Plaintiff must avoid continuous sitting. *Id*. Plaintiff could occasionally (up to one-third of an eight-hour workday) lift up to twenty pounds and occasionally carry up to ten pounds. *Id*. Dr. Sinha also opined that Plaintiff could occasionally grasp, turn, and twist objects bilaterally and occasionally use her hands and fingers for fine manipulations, but she

could never/rarely use her arms for reaching overhead. R. 813. Dr. Sinha further opined that, in an average eight-hour day, Plaintiff's experience of pain, fatigue, or other symptoms would be severe enough to frequently (from one-third to two-thirds of an eight-hour workday) interfere with her attention and concentration. R. *Id.* According to Dr. Sinha, Plaintiff would need to take a one-half hour break every two hours during an eight-hour workday. *Id.* Dr. Sinha went on to opine that Plaintiff would likely be absent from work two to three times per month as a result of her impairments or treatment. *Id.* When asked whether Plaintiff's symptoms and related limitations apply as far back as January 1, 1995, Dr. Sinha responded as follows: "I have seen patient in this office since 2013, so it is difficult to opine on conditions from 1995[.]" R. 814 (reflecting also that his specialty is pain medicine).

## V.     DISCUSSION

Plaintiff challenges, *inter alia*, the ALJ's consideration of Dr. Sinha's opinions related to her fibromyalgia when crafting the RFC. *Plaintiff's Brief*, ECF No. 17, pp. 26–35; *Plaintiff's Reply Brief*, ECF No. 19, PAGEID## 1288–1290. Plaintiff's arguments are well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the

medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[4] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and

---

[4] As previously noted, Plaintiff's claim was filed on January 20, 2017. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)

13

> except that she can never climb ladders, ropes, or scaffolds. She can never be exposed to unprotected heights or hazardous machinery. She can occasionally climb stairs and ramps. She can never crawl. She can occasionally kneel, stoop, and crouch. She can perform occasional overhead reaching and frequent reaching in all other directions. She can perform frequent fingering and handling. She can frequently balance. She can have occasional contact with supervisors, coworkers, and the public. She is able to perform only simple and routine tasks.

R. 29. In reaching this determination, the ALJ, *inter alia*, assigned "limited weight" to Dr. Sinha's opinions, reasoning as follows:

> Finally, treating provider Neil Sinha, M.D. reported that the claimant could sit, stand, and/or walk for one hour in an eight-hour workday. He said that the claimant could not lift and/or carry more than ten pounds and would miss more than three days of work per month (Ex. 10F; 13F). The record does not support the restrictive limitations reported by Dr. Sinha, because, despite extremity and back pain, abdominal issues, and fatigue, *the claimant generally showed grossly normal motor strength, with a normal gait and good extremity range of motion* (Ex. 5F/155; 7F/49; 8F/18, 43). In addition, the claimant showed improvement in her abdominal pain with surgery and medication (Ex. 7F/31; 16F/142). As such, Dr. Sinha's opinion is given limited weight.

R. 32–33 (emphasis added).

Plaintiff challenges, *inter alia*, the ALJ's consideration of Dr. Sinha's opinions in this regard, arguing that fibromyalgia[5] is documented primarily through subjective statements and

---

[5] Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Under SSR 12-2p, a claimant can establish fibromyalgia as a severe medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"), or the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria"). *Id*.; *see also Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005) ("These tender points are called "trigger points." . . . . All points may not be painful at all times in every person. . . . The pain may vary in intensity according to the time of day, weather, activity level, stress, and sleep patterns.") (citations omitted).

Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) "[e]vidence that other disorders that

often eludes objective measurement, and, therefore, the ALJ erred in focusing on normal motor strength, gait, and extremity motion when discounting Dr. Sinha's opinions. *Plaintiff's Brief*, ECF No. 17, pp. 28–31 (collecting cases). Plaintiff further argues that the ALJ erred in ignoring the applicable regulatory factors when discounting Dr. Sinha's opinion, noting the fact that Dr. Sinha regularly treated Plaintiff; the nature of the treatment focusing on Plaintiff's disabling chronic pain; Dr. Sinha's citation to evidence that supported his opinion and which was confirmed by the longitudinal record; and Dr. Sinha's specialization in pain treatment. *Id*. at 34–35.

The Acting Commissioner counters that the ALJ properly discounted Dr. Sinha's extreme "checkbox" opined limitations (which she notes have been described as "weak evidence at best") where Plaintiff generally showed grossly normal motor strength, with a normal gait, and good

---

could cause the symptoms or signs were excluded. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." SSR 12-2p.

Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring condition were excluded[.]" *Id*. Symptoms or signs include "somatic symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id*. Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id*.

range of motion. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 17–18. In responding to Plaintiff's argument that the ALJ's focus on these normal findings was inappropriate, the Acting Commissioner contends that Plaintiff does not acknowledge that Dr. Sinha also diagnosed Plaintiff with, and treated her for, low back pain and degenerative disc disease. *Id*. at 19 (citing, *inter alia*, R. 772 (Dr. Sinha's opinion dated November 7, 2017)). The Acting Commissioner argues that Dr. Sinha's opinions therefore considered Plaintiff's fibromyalgia in the context of disc disease, which has an objective component. *Id*. (citing, *inter alia*, *Trauterman v. Comm'r of Soc. Sec.*, 296 F. App'x 218, 220–21 (3d Cir. 2008)).

Plaintiff replies that Dr. Sinha did not attribute Plaintiff's disabling pain to any other condition. *Plaintiff's Reply Brief*, ECF No. 19, PAGEID# 1288. Plaintiff also argues that the ALJ improperly relied on his own lay opinion to find that Plaintiff's fibromyalgia was not disabling. *Id*. at PAGEID# 1289. Plaintiff goes on to argue that the Acting Commissioner's suggestion that Dr. Sinha's opinions were entitled to less weight because they were "checkbox" opinions amounts to nothing more than *post hoc* rationalization. *Id*. at PAGEID# 1290.

The Court concludes that the ALJ failed to properly consider Dr. Sinha's opinions regarding Plaintiff's fibromyalgia. As set forth above, the ALJ found at step two of the sequential evaluation that Plaintiff's fibromyalgia was a severe impairment, R. 26, but nevertheless assigned "limited weight" to Dr. Sinha's opinion regarding the limitations resulting from that impairment, R. 32–33. Relying on *Trauterman*, the Acting Commissioner urges this Court to find that the ALJ properly discounted Dr. Sinha's opined limitations flowing from Plaintiff's fibromyalgia because Dr. Sinha also diagnosed low back pain and degenerative disc disease. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 19–20 (citing, *inter alia*, R. 772–76, Dr. Sinha's opinion dated November 7, 2017). In *Trauterman*, the Court of

16

Appeals for the Third Circuit found that the claimant's arguments that the ALJ had erroneously required objective evidence of fibromyalgia were "based on a distortion of the ALJ's decision[,]" reasoning as follows:

> The fatal flaw in [the claimant's] second argument is the fact that her claim of disability is not attributed exclusively to fibromyalgia. In addition to his diagnosis of fibromyalgia, Dr. Schibli found that [the claimant] suffered from cervical spine disc herniation, lumbar spine degenerative joint disease, and carpal tunnel syndrome. In light of these diagnoses, it was quite appropriate for the ALJ to consider the objective medical evidence of record. After doing so, the ALJ found that Dr. Schibli's diagnosis of cervical spine disc herniation was contrary to [the claimant's] January 2004 cervical MRI. The ALJ also found that the lumbar spine degenerative joint disease was confirmed to be "minimal" and "mild" based on the lumbar MRI. After our independent review of the record, we find that these conclusions are supported by substantial evidence.

*Trauterman*, 296 F. App'x at 220–21. In the present case, even though Dr. Sinha's November 2017 opinion noted the diagnosed impairments of "low back pain[,]" "degenerative disc disease[,]" and "Myalagia[,]" R. 772, his June 2019 opinion made no mention of those conditions. R. 809. In other words, Dr. Sinha expressly attributed Plaintiff's opined limitations– which included, *inter alia*, an ability to stand/walk for only three hours in an eight-hour workday, R. 812; never/rarely use her arms for reaching (including overhead), R. 813; Plaintiff's pain, fatigue, or other symptoms that frequently interfere with her attention and concentration, *id.*; her need to take unscheduled half-hour breaks every two hours, *id.*; and her need for two to three absences a month, *id.*–to Plaintiff's fibromyalgia. R. 809–14. As previously discussed, the ALJ rejected these opined limitations because Plaintiff "generally showed grossly normal motor strength, with a normal gait and good extremity range of motion" and "showed improvement in her abdominal pain with surgery and medication," R. 32–33—findings that are irrelevant to a diagnosis of fibromyalgia. "[I]t is error for an ALJ to rely on the lack of objective evidence to reject a treating physician's opinion in a disability case involving a diagnosis of fibromyalgia due

17

to the nature of the disease." *Henderson v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012) (stating further that the ALJ "erred by failing to address the unique circumstances presented by a claimant alleging disability based on a diagnosis of fibromyalgia") (citations omitted); *see also Foley*, 432 F. Supp.2d at 475 (noting that the ALJ discounted a physician's assessment of the claimant's condition because "it was not supported by any independent findings and observations" and stating that "[t]he problem with looking for independent findings and observations is that fibromyalgia is a disease which is notable for its lack of objective diagnostic techniques") (cleaned up); *id.* at 476 ("[I]n a disability determination involving fibromyalgia, it is error to require objective findings when the disease itself eludes such measurement.") (citations omitted). Notably, the Acting Commissioner concedes that the ALJ's other proffered reason for discounting Dr. Sinha's opined limitations—improvement in abdominal pain—is "unrelated to Plaintiff's fibromyalgia." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 19 n.7.

To the extent that the Acting Commissioner argues that the ALJ properly evaluated Dr. Sinha's opinions because they were "checkbox evidence" and therefore entitled to little weight, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 18, Plaintiff correctly points out that the ALJ did not rely on this reasoning when discounting this physician's opinions. R. 32–33. The Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001)

(stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

Furthermore, the Court cannot conclude that the ALJ's error in rejecting Dr. Sinha's January 2019 opined limitations is harmless. The vocational expert testified that no jobs would be available to a hypothetical individual who is off-task 15% of the workday or absent from work three or more days per month. R. 78. The vocational expert also testified that the three jobs identified by her and upon which the ALJ relied at step five—*i.e.*, mail clerk, photocopy machine operator, and cafeteria attendant, R. 34, 77—would not be available to an individual who could only occasionally use the arms for handling and fine manipulation, R. 79, or if that individual could not reach in any direction or could sit for only three hours per day. R. 80.

The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[6]

---

[6] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the RFC and Plaintiff's limitations flowing from her fibromyalgia, the Court does not consider those claims. In addition, the Court notes that Plaintiff asks that this matter be reassigned to a different administrative law judge upon remand. *Plaintiff's Brief*, ECF No. 17, p. 40 ("In light of this ALJs [sic] apparent willingness to ignore Plaintiff's fibromyalgia, Plaintiff requests a different ALJ be assigned on remand in the interests of justice."). The Court is not persuaded that the ALJ's error in considering Dr. Sinha's opinions related to Plaintiff's fibromyalgia establish that the ALJ subjected Plaintiff to "unwarranted hostility or bias" justifying reassignment to a new administrative law judge. *Fisher v. Comm'r of Soc. Sec.*, No. CV 20-1467, 2021 WL 4288313, at *6 (W.D. Pa. Sept. 21, 2021) (citations omitted). The Court therefore declines Plaintiff's request in this regard.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  November 1, 2022                                    *s/Norah McCann King*
                                                                                  NORAH McCANN KING
                                                                         UNITED STATES MAGISTRATE JUDGE